**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

MICHAEL ADAMS, )
)
Plaintiff, )
)
v. ) Case No. CIV-22-155-D
)
NATIONAL HEALTH INSURANCE COMPANY, )
)
)
Defendant. )

**ORDER**

Before the Court is Defendant National Health Insurance Company's Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment, and Brief in Support [Doc. Nos. 46, 47]. Plaintiff filed a response [Doc. No. 57], and Defendant filed a reply [Doc. No. 62]. The matter is fully briefed and at issue.

**BACKGROUND**

Plaintiff filed this action after various medical claims were denied by his health insurer, Defendant National Health Insurance Company, and his short-term health insurance policy was rescinded. Plaintiff alleges that Defendant breached its contract with Plaintiff to timely pay benefits owed under the terms of his health insurance policy. Further, Plaintiff alleges that Defendant breached its duty of good faith and fair dealing by refusing to timely pay and failing to perform a reasonably appropriate investigation of Plaintiff's medical claims.

Defendant seeks summary judgment in its favor with respect to each of Plaintiff's causes of action. Relying on an alleged misrepresentation in Plaintiff's health insurance

application, Defendant argues that it had a legitimate basis for refusing performance under the policy and that its investigation was reasonable under the circumstances. Alternatively, Defendant seeks summary judgment on the theory of accord and satisfaction, or mutual rescission, arguing that Plaintiff assented to Defendant's rescission of the policy by retaining refunded premiums. In response, Plaintiff maintains that he was honest with the insurance agents as to each application question and never consented to Defendant's rescission of the policy.

**UNDISPUTED MATERIAL FACTS**

On August 31, 2020, Plaintiff filled out an application for short-term medical insurance to be issued by Defendant. Plaintiff's application was completed over the phone with the assistance of insurance agents from Healthcare Solutions Team, LLC, Karen McLean and Ghaleb Zayed. During the application process, Plaintiff was read multiple questions and was told that a negative response to any of the questions would result in non-issuance of the policy.

One of the questions was whether Plaintiff or his wife had "received medical or surgical treatment" or "consulted a health care professional" for any "neck or back disorder, joint replacement" within the previous five years. Plaintiff alleges that he told Zayed over the phone that he had recently undergone back surgery after tripping on a hose at work, and that Plaintiff had filed a worker's compensation claim for his back injury. Plaintiff further alleges that Zayed assured Plaintiff that his work-related injury was not considered a "neck or back disorder" that would prevent him from being approved for the policy. The

insurance agents filled out a negative response for the back disorder question, submitted the application, and Defendant issued Plaintiff's policy.

In October of 2020, during the term of Plaintiff's policy, Plaintiff sought treatment for abdominal pain and severe diarrhea and was diagnosed with colon cancer, which required surgery. Plaintiff incurred approximately $250,000 in medical expenses associated with his cancer treatment. When Plaintiff's medical providers submitted claims for his cancer treatment to Defendant, Plaintiff's medical bills were flagged for review for a possible pre-existing condition exclusion related to the presence of diagnostic code K76.9 for liver lesions.

On November 20, 2020, Defendant notified Plaintiff that his claims were under review for possible pre-existing condition exclusions or material misrepresentations in his insurance application. Defendant conducted an investigation of Plaintiff's claims and application. Although no evidence warranting denial of coverage based on a pre-existing condition exclusion was found, Defendant convened a rescission panel upon discovering records related to Plaintiff's back surgery.

Defendant's rescission panel reviewed 1) a summary of Plaintiff's back surgery records; and 2) an instruction that the question regarding back disorders "should have been marked 'Yes'." The rescission referral form reviewed by the panel did not contain any information related to whether Plaintiff intended to misrepresent his medical history. Upon reviewing the summary of Plaintiff's back surgery records, Defendant's panel unanimously decided to move forward with rescission based on a material misrepresentation in Plaintiff's insurance application.

On April 7, 2021, Defendant sent Plaintiff a letter explaining its intent to rescind Plaintiff's policy for the incorrect negative response to the "neck or back disorder" question in the application. Defendant explained that rescission "is the termination of [the] policy as of its effective date, as though the policy had never been issued." Defendant's letter directed Plaintiff to respond within 35 days or Defendant would proceed with rescission.

Plaintiff timely responded that he disagreed with Defendant's decision to rescind the policy and that he had "answered the questions truthfully with the agents." Plaintiff further notified Defendant that he had contacted the Oklahoma Insurance Department. In Plaintiff's OID complaint, he explained as follows: "I had a[n] accident on the job in 2019 and was on workman comp. I had surgery, but I didn't receive a joint replacement. I don't have an[y] hereditary back disorders. I am not satisfied with the decision. The agent and another person did the health insurance application online with me and I was honest with them and told them everything I knew." Def.'s Ex. 12, OID Documents. OID shared Plaintiff's statement and corresponding documents with Defendant on May 5, 2021.

On June 18, 2021, Defendant sent Plaintiff another letter, explaining that Plaintiff's appeal had been reviewed and the decision to rescind the policy stood. Defendant stated that Plaintiff's policy "has been rescinded" and that Defendant would refund premiums to the payment method on file. Thereafter, Defendant automatically refunded the premiums[1] to Plaintiff's payment method on file, and Plaintiff retained the premiums.

The policy's language on rescission provides:

---

[1] It is not clear from the record whether the refunded premiums included interest.

> **Rescission**. We may rescind coverage for a Covered Person or all Covered Persons if we determine that there was fraud or intentional misrepresentation of a material fact that caused us to issue this coverage when coverage would not have been issued. Rescission causes coverage to be terminated back to the Effective Date as if the coverage were never issued. Rescission will result in denial of all applicable claims. If rescission occurs we will refund premiums received less any claims we have paid for the person(s) whose coverage is rescinded. If we have paid claims in excess of the amount of premium we received, we have the right to obtain a refund.

Def.'s Ex. 8, Policy, at p. 14.

For its investigation of whether Plaintiff made an intentional misrepresentation, Defendant invited Plaintiff to make a written statement in response to the April 7 letter and sent an e-mail with six questions to Karen McLean, one of the two agents who assisted Plaintiff in filling out his insurance application. Defendant's e-mail provided that a response from the agent was required within 48 hours. Approximately one month later, McLean responded, but did not provide an answer to the following question: "Did [Plaintiff] mention any concern regarding coverage from pre-existing conditions?" In response to a question concerning which conditions Plaintiff made the agents aware of, McLean merely stated that Plaintiff "answered no pre-existing conditions existed."

In response to Plaintiff's statement that he was honest with the agents as to each question, and following McLean's minimal response to Defendant's investigative e-mail, Defendant did not call or meet with Plaintiff or his wife; follow-up with McLean as to the unanswered question or inquire specifically as to whether Plaintiff notified the agents of his recent back surgery; or inquire via e-mail or otherwise with Ghaleb Zayed, the agent who assisted with Plaintiff's application.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether summary judgment is proper, courts do not weigh the evidence and determine the truth of the matter asserted, but determine only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *See Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

## DISCUSSION

### I. Accord and Satisfaction

"Under Oklahoma law, an accord and satisfaction occurs when parties agree to discharge each other's obligations under an old contract and perform under a new contract." *Strickland Tower Maintenance, Inc. v. AT&T Comms., Inc.*, 128 F.3d 1422, 1428 (10th Cir. 1997) (citation omitted). "There must be a substitution by agreement of the parties of something else in place of the original claim." *Strickland*, 128 F.3d at 1428 (citation and internal quotations omitted). To show accord and satisfaction, "[t]here must be: 1) a bona fide dispute over an unliquidated claim amount; 2) a check tendered in full settlement of

the claimed amount; and 3) acceptance of the payment." *Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates*, 3 F. App'x 838, 839-40 (10th Cir. 2001).

Defendant acknowledges there is no Oklahoma authority applying mutual rescission through accord and satisfaction to an insured's retention of refunded premiums. Def.'s Mot. at 11. Defendant argues, however, that the Oklahoma Supreme Court has generally applied accord and satisfaction in the insurance setting, citing *Pac. Mut. Life Ins. Co. of Cal. v. Coley*, 162 P. 713 (Okla. 1917). In *Coley*, the insured sought payment on an insurance claim for a workplace injury. *Coley*, 162. P. at 713. The insurer argued accord and satisfaction after sending a check to the insured, which the insured cashed. *Id.* at 715. Notably, the check was accompanied by a letter explaining that the insured's claim, if anything, would come within the illness clause of the policy, not the accident provision. *Id.* at 714. The insurer further explained that the partial payment enclosed was to give the insured the benefit of the illness clause limit, "without acknowledging liability even in that amount." *Id.* In addition to this declaration, the insured executed and returned the following receipt for the check:

> **Receipt and Indorsement.** Received the above balance, being in full satisfaction and final settlement of all claims accruing or to accrue against the Pacific Mutual Life Insurance Company of California on account of any accident already sustained and any disease or illness heretofore contracted. S.B. Coley.

*Id.* Thereafter, the insured compared the contents of the letter to the provisions of his policy and cashed the check. *Id.* at 715. Upon finding "no contention [] of fraud, misrepresentation, or concealment," the Oklahoma Supreme Court held that the insured's

negotiation of the check and receipt for full satisfaction and final settlement of all claims constituted an accord and satisfaction. *Id.*

The Court is not convinced that the *Coley* decision is instructive. In this case, Defendant returned Plaintiff's premium payments via automatic deposit to his payment method on file. On June 18, 2021, prior to refunding Plaintiff's premiums, Defendant sent a letter to Plaintiff explaining its final decision to rescind Plaintiff's policy. In the letter, Defendant informs Plaintiff that his policy "*has been rescinded*," that "[r]escission causes your coverage to be terminated back to the Effective Date as if the coverage was never issued," and "[r]escission results in the denial of all of your claims." Further, Defendant notified Plaintiff that it would "refund premiums received for any coverage we rescind" and "subtract total claim payments made for your benefit from this premium refund." The letter does not indicate that the refunded premiums will be accepted as "full and final payment of all claims," but rather indicates that the policy had been rescinded, over Plaintiff's stated objection. This case is unlike *Coley*, where the insured clearly assented to a fixed sum for full and final payment of all claims against his insurer.

Viewing all inferences in Plaintiff's favor, and acknowledging that accord and satisfaction is generally a question for the jury, the Court finds that Defendant is not entitled to summary judgment on accord and satisfaction. *See Cinco Enterprises, Inc. v. Benso*, 890 P.2d 866, 874 (Okla. 1994) ("Whether the parties have reached an accord and satisfaction depends upon the circumstances in each case and must be ascertained from the parties' intentions. … [T]he question of intention is a question of fact to be determined by a jury, unless a jury is waived and the matter is tried to the court."); *see also* 15A STEVEN PLITT,

et al., COUCH ON INSURANCE § 215:28 (3d ed., June 2023 update). Because a reasonable jury could infer from the circumstances that Plaintiff did not assent to a new agreement or consent to Defendant's rescission of the policy, Defendant is not entitled to summary judgment on accord and satisfaction.

## II. Bad Faith

Defendant argues it is also entitled to summary judgment on Plaintiff's bad faith claim. Plaintiff contends that Defendant breached its duty of good faith and fair dealing by refusing to timely pay benefits owed and by failing to conduct a reasonable investigation of Plaintiff's claim.

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977); *see also Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (recognizing an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received."). "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well established. *Gov't Employees Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *see also Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009); *Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007). "However, when presented with a claim by its insured, an insurer 'must conduct an investigation reasonably appropriate under the circumstances' and 'the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.'" *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (quoting *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762

(Okla. 1984)); *see Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991); *see also Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012). An insurer's duty "to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's contractual duty to *timely* pay a valid claim." *Brown*, 157 P.3d at 122 (emphasis in original). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiff pursuant to Rule 56, the Court finds that a genuine dispute of material fact precludes summary judgment on the issue of bad faith conduct. Plaintiff has presented minimally sufficient facts from which reasonable jurors could find that Defendant did not conduct a reasonable investigation under the circumstances. Although Plaintiff notified Defendant that he had been honest with the insurance agents, Defendant's investigation consisted of reviewing Plaintiff's medical records and sending an e-mail to Karen McLean. Upon receiving McLean's minimal response in which she references Zayed's in-depth participation on the call, Defendant did not seek a statement from Zayed, inquire specifically with McLean as to whether Plaintiff disclosed his back surgery, or inquire further with Plaintiff. In this case, where the reasonableness of Defendant's conduct to ensure that Plaintiff received the benefits of his insurance policy is reasonably subject to different conclusions, the question must be resolved by a trier of fact. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's bad faith claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant National Health Insurance Company's Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment, and Brief in Support [Doc. Nos. 46, 47] is **DENIED** in its entirety.

**IT IS SO ORDERED** this 13th day of November, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge